José Limardo Costa et al., Complainants, Appellants, and Appellees, *v.* Eastern Sugar Associates, etc., Defendant, Appellee, and Appellant.

Nos. 12406, 12719-12722.   Decided December 21, 1961.

*Fiddler, González, Guillemard,* and *Rodríguez* (*Eduardo Negrón Rodríguez* on the brief) for defendant, appellee, and appellant. *Vicente Géigel Polanco* and *Vicente Géigel Lanuza* for complainants, appellants, and appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Eastern Sugar Associates, a trust owner of several sugar mills in the central and eastern parts of Puerto Rico, has operated for several years a department of its enterprise in Punta Santiago, Humacao, which is engaged in the transportation of sugar cane by vessels from the Island of Vieques to Puerto Rico and in the shipment abroad of sugar and molasses from the warehouses of that department. Prior to January 1948, the complainants rendered different services in this department—Limardo and Lozada, as tugboat operators; Martínez, as seaman; López Rosa, as timekeeper; and Andréu, in charge of the warehouse. Until February 16, 1956, the complainants' services were compensated on the basis of a guaranteed weekly wage which covered generally the payment of 40 regular work hours and 20 extra hours. Under this plan they enjoyed certain additional benefits such as annual vacation, sick leave, and absence from work without wage reduction. They were also covered by the retirement plan established by the defendant for its employees.

On September 13, 1954, the complainants filed a claim for wages covering services rendered since 1943. They challenged the validity of the agreements whereby they were compensated on the basis of a guaranteed weekly wage which covered regular as well as extra hours. On November 14,

1955, the superior court rendered judgment for the complainants, from which appeal was taken. While the proceeding was pending,[1] the employer notified the complainants that in view of the judicial decision declaring that the minimum weekly compensation agreements were contrary to law, and in order to abide by the norms prescribed by Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254),[2] as of February 16, 1956 they would continue to render services on the basis of a wage for hours actually worked.

Relying on the provisions of § 19 of Act No. 8 of April 5, 1941 (Sess. Laws, p. 302, 29 L.P.R.A. § 230) and § 18 of Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254, 29 L.P.R.A. § 287),[3] the complainants brought an action seeking their reinstatement as employees with the same weekly wage which they earned prior thereto and claiming damages caused to them by defendant's action. The superior court sustained the complaints, although it recognized that "the defendant was not bound to continue in force with the complainants

---

[1] On June 29, 1960, this Court modified the judgment of the Superior Court solely for the purpose of recomputing the compensation to which the complainants were entitled for the extra hours worked, according to the norms enunciated in *Laborde* v. *Eastern Sugar Associates*, 81 P.R.R. 468 (1959). The determination on the illegality of the frustrated Belo-type contracts was not altered. *Limardo et al.* v. *Eastern Sugar Associates*, No. 12037.

[2] Section 11 of Act No. 379 *supra*, 29 L.P.R.A. § 280, provides that "any clause or stipulation of a labor contract in which the compensation of the employee is fixed at a rate of wages by the day, by the week, or by the month, which consolidates the payment of regular hours and the extra hours of work, shall be null." See *Peña* v. *Eastern Sugar Associates*, 75 P.R.R. 288 (1953), *aff'd*, 222 F.2d 934 (1955); *Olazagasti* v. *Eastern Sugar Associates*, 79 P.R.R. 88 (1956); *Berríos* v. *Eastern Sugar Associates*, 79 P.R.R. 647 (1956); *Laborde* v. *Eastern Sugar Associates*, 81 P.R.R. 468 (1959).

[3] Section 18 of Act No. 379 *supra* does not authorize the filing of a civil action against the employer "who discharges or otherwise discriminates against any employee because the latter has instituted or caused to be instituted any proceeding" claiming wages. It merely imposes on the employer penalties of a criminal nature. *Cf. Cardona* v. *District Court*, 62 P.R.R. 59 (1943); *Torres* v. *Perea*, 66 P.R.R. 164 (1946).

the same type of contract which included extra and regular hours, since this was clearly void." Both parties appealed.

Section 19 of the Minimum Wage Act of 1941, 29 L.P.R.A. § 230,[4] provides that:

"Every employer who discharges, suspends, refuses to admit or reinstate, reduces the wages, lowers the category, increases the working hours of, or imposes more onerous working conditions on, discriminates or threatens to do any of these acts to evade compliance with any decree or because said employee or ex-employee may have complained, offered or given testimony, or is willing to offer or give it, or because he believes that he may offer or give it, in any investigation, complaint, or claim made, or hearing held, or administrative or judicial proceeding heretofore or hereafter carried out in relation to, or for the application of, this chapter or of any decree, regulation, resolution, or agreement of the board, or because he may have served, is serving, or intends to serve as a special member of the Minimum Wage Board, shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of from one hundred (100) to one thousand (1,000) dollars, or shall be imprisoned in jail for a term of from one (1) month to six (6) months, or shall suffer both penalties, in the discretion of the court.

"It shall be presumed that any of the said acts are due to the filing of a complaint or to the offering or giving of testimony, or to the willingness to offer or give the same, or to the belief that the same will be offered or given, or to service in the board, as the case may be, when the employer has performed the act before the expiration of six months after the end of the investigation, complaint, claim, hearing, proceeding, or service in the board, unless it is satisfactorily shown by the employer that he has stated the purpose he really had to the employee or ex-employee before the investigation, complaint, claim, hearing, proceeding, or proposal to serve in the board, existed.

"The employer shall reinstate the laborer in his employment or cease to continue the act in question. To oblige him to act

---

[4] An identical section was incorporated into the Minimum Wage Act of 1956, by § 24 of Act No. 96 of June 26, 1956 (Sess. Laws, p. 622, 29 L.P.R.A. § 245w (Supp.)).

as herein determined, the Superior and District courts shall have cognizance concurrently of simple, rapid, and preferential proceedings, in which the interested parties and the board shall be given an opportunity to be heard. In said proceedings there shall also be investigated the damages which the act may have caused the employee or ex-employee, in whose favor judgment shall be rendered for double the amount of the damages caused, in addition to granting him costs and a reasonable sum, which shall never be less than fifty (50) dollars for attorney's fees."

■ When the Minimum Wage Act was originally enacted in 1941, § 19 was exclusively penal in character. It was confined in its application to cases of discharge or any other form of discrimination by the employer against the employee "because said employer believes that said employee or former employee may testify in any investigation or proceeding related to the application of this Act." It may be noted that it was rather aimed at encouraging the appearance of the laborers and employees to give testimony in proceedings related to the fixing of minimum wages and the establishing of working conditions for the different industries or activities. It was not until the enactment of Act No. 217 of May 11, 1945 (Sess. Laws, p. 680) that the ambit of its application was considerably enlarged to cover expressly (1) the discharge; (2) the suspension; (3) refusal to admit or reinstate; (4) the reduction of wages; (5) the lowering of the category of the employee; (6) the increase in work hours; (7) the imposition of more onerous working conditions; (8) or any other kind of discrimination; (9) or the threat to do any of these acts. It also refers specifically to the imposition of civil penalties—reinstatement in employment or discontinuation of the discriminatory act, and investigation and compensation for the damages caused to the employee—because the laborer may have complained, offered or given testimony, or is willing to offer or give it, or because he be-

lieves that he may offer or give it [5] in any investigation, complaint, hearing, claim, or administrative *or judicial* proceeding carried out in relation to the application of the Act or any regulation, decree, resolution, or agreement of the Board, or because he may have served, is serving, or intends to serve as a member of a minimum-wage committee.

In *Cadilla* v. *Condado Beach Hotel*, 70 P.R.R. 869 (1950), we defined the scope of the presumption established by that section, and to that end we said that the presumption was rebuttable; that the claimant established his prima facie case upon presenting evidence on the existence of a wage claim against his employer and the fact of the discharge or commission of the discriminatory act prior to the expiration of the six-month period counted as of the termination of the complaint or claim, and that it was incumbent on the employer in such case to show that the discharge or discriminatory act was not due to the filing of the claim. The trial court recognized the rebuttable character of the presumption, but indicated that "the evidence to destroy this presumption must be of such nature as to convince the court that the change of the contract establishing more onerous conditions lowering the category of the employee, does not involve in itself a discrimination." Actually, it is only necessary that the employer prove to satisfaction that the change in the working conditions does not constitute a reprisal for having brought an action claiming wages. In other words, there may be circumstances in which a change unfavorable to the laborer may have taken place and yet there is no cause of action. A claim will lie only, we repeat, when the purpose sought is to punish the laborer for having sued.

Although the instant case does not involve a discharge, since the complainants continued to work for the defendant in

---

[5] This provision on the belief that the employee may offer or give testimony in certain proceedings was eliminated by Act No. 451 of May 14, 1947 (Sess. Laws, p. 950).

the same tasks which they performed prior to the filing of the claim and during its pendency in the courts, we could admit, only for the sake of argument, that defendant's action in altering in the manner above described the labor-management relation constitutes an act of "lowering the category of the employee." However, the more rational balance of the evidence offered clearly reveals that the purpose of the employer's action was not to discriminate against the laborers because they had filed claims for extra hours, but to comply with a provision of law which a court of justice decided, at the instance of the complainants themselves, had been violated by the former employment agreements guaranteeing a weekly wage. At the time the defendant discontinued the employment agreements on the basis of a minimum weekly compensation, the judgments rendered for the complainants by the superior court on November 14, 1955 for extra hours were as follows: Limardo, $36,921.66; Lozada, $34,983.74; López Rosa, $5,532.96; Andréu, $15,044.82; Martínez Torres, $20,134.33. These sums were later readjusted pursuant to the ruling in the *Laborde* case *supra*. In this case the employer merely discontinued illegal labor agreements. Such action, upon the advice of its attorneys, protected it against future claims if it continued to compensate the complainants in the manner which the court found was contrary to law.

Unusual emphasis is placed on the fact that the claimants forfeited certain fringe benefits by working on the basis of an hourly compensation. These aspects of the labor agreement are proper for the discussion of collective bargaining. In this connection, it was established that on February 16, 1956, when the employment norm was changed, the employer was barred from giving value or effect to the collective agreements which would be in force, or from extending, renewing, modifying, or supplementing the same until there was a certification from the Federal Labor Relations Board on the

proper contracting unit. On the other hand, if the previous agreement was annulled at the instance of the complainants in order to be entitled to additional compensation for extra hours worked, it would be more fair and reasonable for the defendant to prevent similar claims by changing the employment practices.

The existence of discrimination is determined by the fact that the employment practice was changed three months after judgments were rendered for the laborers and by the limitation of their effects to the employees of the Playa Department. Actually, we see no connection between the alleged discrimination and the period elapsed between the date of the judgment and the effective date of the new employment agreement. From the evidence it appears that the matter was under study by the employer's attorneys. Three months is not an unusually long period to make a determination of this nature. Furthering the trial court's position, we would have to conclude that if the change of practice would have been adopted immediately after rendition of the judgment, such action would be indicative of absence of discrimination. This result is clearly illogical. Regarding the fact that the change occurred principally in the Playa Department, this fact is satisfactorily explained since the other employees who continued to work for a weekly wage always worked on a regular time schedule, while those of that department depended on the frequency of the sugar and molasses shipments. Evidently, the complainants' position is that the defendant was bound to continue to pay them the minimum weekly compensation for the regular work hours and also the extra hours. This solution would be most onerous and oppressive.

Lastly, the trial court says that there was a reduction in the laborers' income. We have examined the summaries of the payrolls offered in evidence and that is true as to some

weeks, but the reverse is also true since there are weeks in which the guaranteed weekly wage was considerably higher.

In view of our conclusion that the change of work was not due to any discrimination of the employer but to a legitimate purpose, we need not discuss the remaining errors assigned.

The judgments rendered by the Superior Court, San Juan Part, will be reversed and the complaints dismissed in their entirety.